I6SKMCFC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                         18 CR 446 (JMF)

5  WILLIAM McFARLAND,

6              Defendant.

7  ------------------------------x

8                                    New York, N.Y.
                                     June 28, 2018
9                                    3:15 p.m.

10

   Before:
11
                   HON. JESSE M. FURMAN,
12
                                     District Judge
13

14                       APPEARANCES

15

   GEOFFREY S. BERMAN,
16      United States Attorney for the
        Southern District of New York
17 CHRISTOPHER DiMASE
        Assistant United States Attorney
18
   RANDALL JACKSON
19      Attorney for Defendant

20 SUSAN J. WALSH
        CJA Attorney on Duty
21

22

23

24

25

I6SKMCFC

1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4              MR. DiMASE:  Good afternoon, your Honor.  Christopher

5    DiMase, for the government.

6              THE COURT:  Good afternoon.

7              MR. JACKSON:  Good afternoon, your Honor.  Randall

8    Jackson, on behalf of the defendant, William McFarland.

9              THE COURT:  Good afternoon to you, Mr. Jackson.  Good

10   to see you.

11             Good afternoon, Mr. McFarland.  You may be seated.

12             Mr. McFarland, my name is Jesse Furman.  I'm a United

13   States district judge here in the Southern District of New

14   York, and have been assigned to this case, which presumably

15   means that I would be the judge who would preside over any

16   trial if you were to go to trial; and, subject to one caveat

17   that I will mentioned in a moment, if you were convicted, I

18   would presumably be the judge who would sentence you.  That

19   caveat is as follows:  I do know that Mr. McFarland has another

20   matter pending before a colleague of mine, Judge Buchwald, that

21   he has pled guilty in that case in response to, or prompted by,

22   a letter from the government advising Judge Buchwald and myself

23   about the two cases.  She and I did have a conversation, and as

24   a result of that conversation, we agreed that I would keep this

25   case, at least for the time being.  Depending upon what happens

I6SKMCFC

1    going forward, there are scenarios in which I think we might

2    conclude that it would make more sense for her to handle it or

3    for me to handle the case that she currently has, which is to

4    say, that those remain open questions.  But subject to that

5    caveat, again, I would be the judge who would preside over any

6    trial and any sentence if you were convicted.

7             The purpose of today's proceeding is, number one, to

8    sort out your representation but also to arraign you on the new

9    indictment in this case, 18 CR 446.  Before we do that, though,

10   let's talk about representation issues.

11            Mr. Jackson, I did receive the letter from you,

12   indicating that your firm had not been retained to represent

13   Mr. McFarland on this matter, and you, through a colleague,

14   appeared at the initial presentment and bail hearing.  But I

15   take it you are seeking to withdraw; is that correct?

16            MR. JACKSON:  Yes, your Honor.  We believe that the

17   appointment of CJA in this case would be appropriate.

18            THE COURT:  All right.

19            I do have a financial affidavit here.  Mr. McFarland,

20   I take it you've seen this form and reviewed it?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  I guess, Mr. DiMase, I ask for your

23   position only because I received the letter from Ms. Greenberg

24   raising some doubts -- I would phrase it that way -- as to

25   whether Mr. McFarland could qualify for appointed counsel.

I6SKMCFC

1    Reviewing the affidavit, I would, in the absence of your

2    letter, have concluded that he does, given that the amount of

3    debt that he has relative to the assets that he has and the

4    fact that he's detained and presumably no longer earning any

5    income.

6         But how do you think I should proceed?

7         MR. DiMASE:  Judge, first of all, I should make clear,

8    I haven't myself seen a copy of the financial affidavit.  I'm

9    not asking to see a copy of it.

10        From the government's point of view, this comes back

11   ultimately to the forfeiture obligation that Mr. McFarland has

12   with respect to the first case.  There was a preliminary

13   consent order of forfeiture in the amount of $26 million

14   entered at the time of the plea on that first case.  And based

15   on the government's knowledge about Mr. McFarland's assets, we

16   don't necessarily believe he has monies in excess of that

17   amount to afford counsel, and any dollar that he might spend

18   for retained counsel would be a dollar that potentially comes

19   out of the pockets of victims who are due restitution in that

20   other case.  I think, for that reason, notwithstanding the

21   assets that are referenced in the government's letter, we do

22   not oppose the appointment of CJA counsel on this case.

23        I would say that the fact that Mr. Jackson is

24   remaining as counsel on the other matter is somewhat in tension

25   with that argument, although my understanding, from speaking to

I6SKMCFC

1    the assistant assigned to the case, is that Mr. McFarland has

2    indicated his family has been paying for retained counsel on

3    the first case.  So I don't know that those assets would

4    necessarily be subject to forfeiture in any event.

5            But that's the long story.  The short story is:

6    Because of the forfeiture allegation and the restitution

7    obligation on the first case, we would not be opposed to the

8    appointment of CJA counsel on this case.

9            THE COURT:  All right.  Very good.

10           Well, I obviously don't know what the arrangement is

11   with Mr. Jackson in the other case, let alone what the source

12   of those funds are, but based on the affidavit and what you

13   just said, I am prepared to approve appointment of counsel in

14   this matter.  Obviously, if it turns out that the defendant

15   does in fact have enough assets to afford counsel or you have

16   any reason to think he does, we can always revisit it, and

17   under the statute, I can either terminate the representation or

18   require him to repay the government for the costs of that

19   representation.

20           But for the time being, I will certainly appoint CJA

21   counsel.  My understanding is Ms. Walsh is here.  She is the

22   CJA counsel on duty; is that correct?

23           MS. WALSH:  That's correct, your Honor.  Good

24   afternoon.

25           THE COURT:  Good afternoon to you.  Do you want to

I6SKMCFC

1   come to counsel table?

2           And, Mr. Jackson, do you want to remain for the

3   conference?

4           MR. JACKSON:  Yes, your Honor, I'll remain.  I am

5   remaining as Mr. McFarland's attorney in the related case, and

6   so I have reviewed the indictment with Mr. McFarland, and so

7   I'll remain for today.

8           THE COURT:  Great.  Well, I thank you for that.

9           Welcome, Ms. Walsh.

10          MS. WALSH:  Thank you, your Honor.  Susan Walsh of

11  Vladeck Raskin & Clark.  Since I've not had the opportunity to

12  review the indictment with the gentleman, it's at my request

13  that his other counsel remain for the purposes of the

14  arraignment, please.

15          THE COURT:  That makes sense.  I appreciate

16  Mr. Jackson's willingness to do so.

17          Ms. Walsh, I heard that you were just making sure that

18  you had no conflict issues, given the nature of the charges in

19  this case.  Have you been able to confirm that?

20          MS. WALSH:  From my -- yes, we do not have a conflict.

21          THE COURT:  Great, excellent.

22          Anything I should take up beyond that before we

23  proceed to arraignment on the charges in the indictment?

24          MR. DiMASE:  Nothing from the government.

25          THE COURT:  All right.  In that case --

I6SKMCFC

1          MR. JACKSON:  No, your Honor.

2          THE COURT:  -- Mr. McFarland, would you please rise.

3          Have you seen a copy of the Indictment 18 CR 446,

4   charging you with one count of wire fraud, one count of money

5   laundering, one count of bank fraud, one count of aggravated

6   identity theft, and one count of obstruction of justice, all

7   while on pretrial release?  Have you seen a copy of that

8   indictment?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Have you read it?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Have you discussed it with Mr. Jackson or

13   his colleagues?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Would you like me to read the indictment

16   out loud, or do you waive its public reading?

17          THE DEFENDANT:  I waive the reading, your Honor.

18          THE COURT:  And how do you plead at this time, guilty

19   or not guilty?

20          THE DEFENDANT:  I plead not guilty.

21          THE COURT:  Thank you.  You may be seated.

22          THE DEFENDANT:  Thank you.

23          THE COURT:  Mr. DiMase, can you tell me, number one,

24   what the status of the Speedy Trial Clock is at this time?

25          MR. DiMASE:  Yes, your Honor.

I6SKMCFC

1              The defendant was arrested and presented on the

2      complaint in this matter on June 12th.  He was indicted on

3      June 22nd.  And so from then till today, approximately six days

4      of speedy trial time elapsed.

5              THE COURT:  I have read the complaint and the

6      indictment, so I assume I have a reasonably good understanding

7      of the nature of the charges, but if there's anything you want

8      to say by way of background, you can tell me that, and beyond

9      that, if you could tell me what the nature and status and

10     discovery is, please.

11             MR. DiMASE:  Judge, I think the complaint and the

12     indictment lay out the essential facts here, so I'll just move

13     straight to discovery unless the Court has additional

14     questions.

15             As far as discovery, we are asking for two weeks to

16     produce that to counsel.  Among other things, the materials

17     would consist of:  A search warrant application for the

18     defendant's residence, with the inventory of photos of the

19     items seized; email communications from different NYC VIP

20     Access email accounts, and, as the Court probably knows from

21     reviewing the complaint in this matter and the indictment, that

22     is the name of the company at issue in this set of charges, so

23     those email communications with victims about the events and

24     ticket sale negotiations; contracts between NYC VIP Access and

25     customers for the ticket sales in question; the separation

1    agreement sent by the defendant to Employee 1 to terminate that

2    person's work for the defendant's companies; NYC VIP Access

3    business records, including spreadsheets of customer

4    information; business records; Venmo account records and

5    payment processor records of NYC VIP employees and associates,

6    showing customer payments to the company; hotel records and

7    records from other third parties showing the defendant's use of

8    the Employee 1's bank account; IP log-in information showing

9    the defendant's use of the company's email accounts and the

10   names of others; and a copy of the check that the defendant

11   forged in the name of Employee 1 and provided to his driver,

12   which is the subject of Counts Four and Five of the indictment.

13            So that is a general overview of the different types

14   of discovery we expect to produce, your Honor.

15            THE COURT:  All right.

16            And the emails and other electronic communications,

17   were any of those obtained by way of search warrant or other

18   application, or were those obtained in some other manner?

19            MR. DiMASE:  To the best of my knowledge, your Honor,

20   I don't believe that those were obtained by search warrant, but

21   I don't know 100 percent for sure; I'd have to check with

22   Ms. Greenberg to know that for sure.

23            THE COURT:  All right.  And any postarrest statements?

24            MR. DiMASE:  Not to my knowledge, your Honor, no.

25            THE COURT:  Is there a process in place to notify any

1    crime victims of their rights under the Crime Victims' Rights

2    Act and applicable law?

3              MR. DiMASE:  My best understanding, your Honor, is

4    that the government has already been in touch with a number of

5    victims, but I will confirm with Ms. Greenberg that all of the

6    victims are appropriately notified as required by law.

7              THE COURT:  Can you do me a favor:  Just to ensure

8    that that is done, can you or Ms. Greenberg file a letter,

9    let's say, by next Tuesday confirming that there is a process

10   in place to notify any known victims of their rights?

11             MR. DiMASE:  Yes, your Honor.

12             THE COURT:  Thank you.

13             So, Ms. Walsh, I understand that you're just coming

14   into this now, and therefore not super familiar with the nature

15   of the charges, but I guess the question I have for you is how

16   long you would anticipate needing or wanting to review the

17   discovery that Mr. DiMase described and consider what, if any,

18   motions you plan to file and file them?

19             MS. WALSH:  Your Honor -- I'm just looking at my

20   calendar -- given the description, it appears that the

21   discovery is probably electronic, and although it's hard for me

22   to gauge in terms of volume, just on that description alone, I

23   think, frankly, realistically, a date the first week in

24   September probably is the most reasonable.  Although I am

25   available in August, I'm not sure that 30 days, 45 days is

I6SKMCFC

1    going to be enough, frankly.

2            THE COURT:  Mr. DiMase, can you give us a sense of the

3    quantity of discovery materials that we're talking about?  Is

4    it mostly in paper or electronic or --

5            MR. DiMASE:  Judge, I'm left to kind of infer from the

6    list of discoverable items that Ms. Greenberg communicated to

7    me.  It looks like it may be a decent amount but not an

8    overwhelming amount of discovery, but I don't have specifics

9    about the number of documents involved, unfortunately.  I'm

10   sorry.

11           THE COURT:  All right.

12           Let me do this.  First, I'll require that the

13   government produce discovery by July 12th, which is two weeks

14   from today.  Then I will set a deadline for filing of any

15   defense motions.  Would September 7th suffice, Ms. Walsh?

16           MS. WALSH:  Can I have the 10th, your Honor, the

17   Monday following?

18           THE COURT:  That's Rosh Hashanah.  Does that pose an

19   issue?

20           MS. WALSH:  It's not a difficulty from my perspective.

21           THE COURT:  Okay.  Well, I won't read it on that day,

22   I can tell you that.  But I will set a deadline for defense

23   motions of September 10th; the government's opposition would be

24   due on September 24th; and any reply would be due on

25   October 1st.

1          Now, my practice is to schedule a second pretrial

2    conference shortly after the deadline for filing of the

3    motions.  That is not to say that I won't let the motions run

4    their course and be fully briefed, but that way, if no motion

5    is filed, we can promptly schedule trial; and if a motion is

6    filed and there's a need for a hearing, we can promptly do

7    that.  In either case, counsel should be prepared to at least

8    address the motions in the event that they're the kind of thing

9    that we could address at a conference.  But the bottom line is,

10   I will have you back on Thursday, September 13th, at 4:15 in

11   the afternoon.  And at that time, again, I will discuss any

12   motions that have been filed, and we'll schedule a hearing if

13   there's a need for one.

14          As counsel may know, my practice is to set a trial

15   date at that second conference.  So you should confer in

16   advance of that conference with respect to how long you would

17   expect a trial to last and when you would want to have a trial.

18   I would try to honor your request as long as it's within reason

19   and consistent with the Speedy Trial Act, but that is with the

20   understanding that when I set a trial date, it is a firm date.

21   So once I set that date, absent something pretty extraordinary,

22   that is the date the case will to go trial, absent another

23   disposition.

24          My understanding is the defendant was detained in the

25   Judge Buchwald case but was granted bail in this case.  Is that

I6SKMCFC

1    correct?

2         MR. JACKSON:  Your Honor, that is correct.

3    Essentially, Judge Gorenstein made a determination that

4    conditions could be set that would allow Mr. McFarland be

5    released.  However, the government invoked the provision for

6    temporary detention, and so he was detained temporarily but

7    Judge Gorenstein set up terms that would apply in this case if

8    Judge Buchwald didn't order him detained in the separate case.

9    But Judge Buchwald has ordered him detained, so we don't think

10   there's a continuing bail issue.

11        THE COURT:  Very good.

12        Is there an application, Mr. DiMase, under the Speedy

13   Trial Act?

14        MR. DiMASE:  There is, your Honor.

15        First, just to address the Court's earlier question:

16   I missed a note here from the assistant, saying the majority of

17   victims have been notified and that we are continuing that

18   process.  I don't know if that satisfies the Court sufficiently

19   not to have to put the letter in, but she has addressed that

20   issue here in her notes.

21        THE COURT:  Why don't you still put a letter in since

22   the majority is not all, and I want to make sure that all are

23   advised of their rights.

24        MR. DiMASE:  Very good.  Yes, your Honor.

25        Yes, we would request the exclusion of speedy trial

1   time from today until the date of the next conference, to

2   September 13th, in order to allow the government to produce

3   discovery, for counsel to review that discovery with the

4   defendant, consider any appropriate motions, file those

5   motions, and potentially discuss a resolution of the case with

6   the government.

7             THE COURT:  Any objections, Mr. Jackson?  Let me ask

8   you first.

9             MR. JACKSON:  No objections, your Honor.

10            THE COURT:  Ms. Walsh?

11            MS. WALSH:  No, your Honor.

12            THE COURT:  All right.  I will exclude time, under the

13  Speedy Trial Act, between today and September 13th, 2018.  I

14  find that the ends of justice served by excluding that time

15  outweigh the interests of the public and the defendant in a

16  speedy trial; to allow the defendant and defense counsel, who

17  is newly appointed, an opportunity to review the discovery that

18  it will be receiving in the next couple weeks; to consider

19  what, if any, motions the defendant wishes to file, and to

20  prepare those motions.

21            Anything else, Mr. DiMase?

22            MR. DiMASE:  No, your Honor.  Thank you.

23            THE COURT:  Mr. Jackson, anything from you?

24            MR. JACKSON:  No, your Honor.  Thank you.

25            THE COURT:  Ms. Walsh?

1          MS. WALSH:  No, your Honor.  Thank you.

2          THE COURT:  All right.  Mr. Jackson, I don't know if

3    you have any files or anything related to the case, but I would

4    just ask that you provide them promptly to Ms. Walsh, and

5    provide her with any assistance she requires to ensure a smooth

6    transition of counsel.  All right?

7          MR. JACKSON:  Yes, your Honor.  And I plan to work

8    cooperatively with Ms. Walsh going forward.

9          THE COURT:  Great.  Thank you.

10          MR. JACKSON:  Thank you, Judge.

11          THE COURT:  Thank you very much, and we are adjourned.

12          MR. JACKSON:  Thank you, Judge.

13                              *  *  *

14

15

16

17

18

19

20

21

22

23

24

25